**F I L E D**
CLERK, U.S. DISTRICT COURT

1/19/2023

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DTA _____ DEPUTY

JOSEPH T. MCNALLY
United States Attorney,
Acting Under Authority Conferred
by 28 U.S.C. § 515
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
BENJAMIN R. BARRON
Assistant United States Attorney
Chief, Santa Ana Branch Office
DANIEL S. LIM (Cal. Bar No. 292406)
MELISSA S. RABBANI (Cal. Bar No. 283993)
Assistant United States Attorneys
    411 West Fourth Street, Suite 8000
    Santa Ana, California 92701
    Telephone: (714) 338-3500
    Facsimile: (714) 338-3561
    E-mail:   daniel.lim@usdoj.gov
             melissa.rabbani@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 8:23-cr-00006-FWS |
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT MELAHAT RAFIEI |
| v. | |
| MELAHAT RAFIEI, | |
| Defendant. | |

    1.   This constitutes the plea agreement between defendant
MELAHAT RAFIEI ("defendant") and the United States Attorney's Office
for the Central District of California (the "USAO") in the above-
captioned case.  This agreement is limited to the USAO and cannot
bind any other federal, state, local, or foreign prosecuting,
enforcement, administrative, or regulatory authorities.

<u>DEFENDANT'S OBLIGATIONS</u>

2.   Defendant agrees to:

a.   Give up the right to indictment by a grand jury and, at the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to a single-count information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with Attempted Wire Fraud, in violation of Title 18, United States Code, Section 1349.

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessment.

<u>THE USAO'S OBLIGATIONS</u>

3.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

d.   Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not further criminally prosecute defendant for violations of 18 U.S.C. § 666(a)(2), Bribery Concerning Programs Receiving Federal Funds, arising out of defendant's conduct described in the agreed-to factual basis set forth in paragraph 10 below.  Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement.  Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

e.   Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range, provided that the offense level used by the Court to determine that range is 16 or higher.  For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

3

NATURE OF THE OFFENSE

4.   Defendant understands that for defendant to be guilty of the crime charged in the single-count information, that is, Attempted Wire Fraud, in violation of Title 18, United States Code, Section 1349, the following must be true: (1) defendant knowingly and willfully participated in or devised a scheme to commit wire fraud, in violation of Title 18, United States Code, Section 1343; and (2) defendant took a substantial step in an effort to bring about or accomplish the crime.

5.   The elements of wire fraud, in violation of Title 18, United States Code, Section 1343, are as follows: (1) a person knowingly devised or participated in a scheme or plan to defraud, or a scheme to obtain money or property by means of false or fraudulent pretenses, representations, promises, or omitted facts; (2) the statements made or facts omitted were material; (3) the person acted with the intent to defraud, that is, the intent to deceive and cheat; and (4) the person used or caused to be used an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

PENALTIES

6.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1349, is: 20 years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

7.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject

to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

8.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that she is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

9.   Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future.  The Court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case.  Defendant understands that unexpected immigration

consequences will not serve as grounds to withdraw defendant's guilty plea.

FACTUAL BASIS

10.   Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 12 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

**Bribery**

Between approximately April 2018 and June 2018, defendant agreed to give at least $225,000 in bribes to Elected Official 1 and Elected Official 2, both of whom were then members of the Irvine City Council, in exchange for their agreement to introduce and pass a city ordinance that would allow defendant's clients to open a retail cannabis store in the City of Irvine.

In particular, in or around April 2018, defendant presented a business opportunity to an individual who was then employed in the medical cannabis industry.  Unbeknownst to defendant, that individual was a confidential human source ("CHS-1") working with the FBI.  Defendant offered to introduce CHS-1 to Elected Official 1.

On or about May 4, 2018, defendant, CHS-1, and Elected Official 1 met in Irvine, California, and discussed Elected Official 1 using Elected Official 1's position as a councilmember to introduce an ordinance within the City of Irvine that would legalize retail

medical cannabis, which would have benefitted CHS-1's business and furthered its interests.  Defendant and Elected Official 1 told CHS-1 and CHS-1's business partner -- a second confidential human source working with the FBI ("CHS-2") -- that they planned to use another member of the Irvine City Council, Elected Official 2, to introduce the ordinance.

On or about May 15, 2018, in a recorded phone call, defendant asked CHS-2 to pay her between $350,000 and $400,000 in exchange for getting the cannabis ordinance introduced.  Defendant explained that the ordinance needed to be introduced while Elected Official 1 could vote on it.

In order to avoid detection and mask the bribe payments to the Elected Officials, defendant planned to enter into legal retainer agreements with the Elected Officials.  Indeed, on or about June 3, 2018, defendant caused a contract to be drafted between her and Elected Official 2, the terms of which included a $25,000 retainer for "legal services."

On or about June 18, 2018 -- after defendant explained to CHS-2 that both Elected Officials were "on board" with the aforementioned plan -- defendant brought Elected Official 2 to CHS-2's office in Irvine, California.  After the meeting, defendant explained to CHS-2 that Elected Official 2 had asked for approximately $25,000 and that Elected Official 1 had asked for $200,000.  Defendant explained that CHS-1 and CHS-2 could not pay Elected Official 1 or Elected Official 2 directly; rather, CHS-1 and CHS-2 would pay defendant, who would then pay Elected Official 1 and Elected Official 2 and disguise the funds as attorney fees for legal services rendered to her various public affairs and campaign management companies.

During the same meeting, defendant described to CHS-2 that the payments had to be "maneuvered" in this way to circumvent the Elected Officials' disclosure requirements, as -- according to defendant -- Elected Officials were not required to identify legal clients on disclosure forms.  As such, defendant intended to pay Elected Official 1 and Elected Official 2 with the money that was to be provided by CHS-1 and CHS-2.

During this time, defendant was the principal and founder of Progressive Solutions Consulting based in Long Beach, California.  As members of the Irvine City Council, both Elected Official 1 and Elected Official 2 were agents of the City of Irvine.  Defendant corruptly agreed to give Elected Official 1 and Elected Official 2 the bribes with the intent to influence and reward Elected Official 1 and Elected Official 2 in connection with business, transactions, and a series of transactions of the City of Irvine having a value of $5,000 or more.  Between January 2018 and January 2019, the City of Irvine received benefits in excess of $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of federal assistance.

### Attempted Wire Fraud

Beginning in September 2019, and continuing through October 2019, in Orange County, within the Central District of California, defendant knowingly, willfully, and with the intent to defraud, attempted to devise and execute a scheme to defraud and obtain money from CHS-2 by means of materially false and fraudulent pretenses, representations, and promises, and material omissions of facts.

Specifically, on September 5, 2019, in Anaheim, California, defendant falsely represented to CHS-2 that, in exchange for a

8

payment of at least $300,000, defendant would work to pass a cannabis-related ordinance in Anaheim that would benefit and be specifically tailored for CHS-2's business, when in fact, defendant was already working on such an ordinance for other paying clients. Defendant then falsely represented to CHS-2 that defendant would keep only $10,000 of CHS-2's payment in exchange for her purported work, when in fact, defendant intended to keep $100,000 of CHS-2's payment.

Defendant also falsely represented to CHS-2 that $200,000 of the $300,000 would go to the Anaheim Chamber of Commerce, when in fact, defendant intended to split $200,000 of the $300,000 equally between her and an associate of hers who was not affiliated with the Anaheim Chamber of Commerce.

Further, defendant instructed CHS-2 to pay the $300,000 via checks made out to various entities.  Defendant intended to deposit the money into accounts that she controlled and then transmit a portion of the funds to others.  Either of these actions would cause interstate wire communications in furtherance of executing the scheme.

Through her actions, defendant believed that she had taken all necessary and substantial steps necessary to complete the scheme.

<u>SENTENCING FACTORS</u>

11.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated

Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

12.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | | |
|---|---|---|---|
| Base Offense Level: | 7 | [U.S.S.G. §§ 2X1.1, 2B1.1] |
| Over $250,000: | +12 | [U.S.S.G. § 2B1.1(b)(1)(g)] |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

13.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

14.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

15.   Defendant understands that by pleading guilty, defendant gives up the following rights:

        a.   The right to persist in a plea of not guilty.

        b.   The right to a speedy and public trial by jury.

        c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.    The right to confront and cross-examine witnesses against defendant.

f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

16.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

///

11

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

17.  Defendant agrees that, provided the Court imposes a term of imprisonment within or below the range corresponding to an offense level of 16 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

18.  The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 16 and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

19.  Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was

12

involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

<u>EFFECTIVE DATE OF AGREEMENT</u>

20.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

<u>BREACH OF AGREEMENT</u>

21.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not

be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

22.   Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.   Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

1  <u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

2  <u>OFFICE NOT PARTIES</u>

3      23.  Defendant understands that the Court and the United States

4  Probation and Pretrial Services Office are not parties to this

5  agreement and need not accept any of the USAO's sentencing

6  recommendations or the parties' agreements to facts or sentencing

7  factors.

8      24.  Defendant understands that both defendant and the USAO are

9  free to: (a) supplement the facts by supplying relevant information

10  to the United States Probation and Pretrial Services Office and the

11  Court, (b) correct any and all factual misstatements relating to the

12  Court's Sentencing Guidelines calculations and determination of

13  sentence, and (c) argue on appeal and collateral review that the

14  Court's Sentencing Guidelines calculations and the sentence it

15  chooses to impose are not error, although each party agrees to

16  maintain its view that the calculations in paragraph 12 are

17  consistent with the facts of this case.  While this paragraph permits

18  both the USAO and defendant to submit full and complete factual

19  information to the United States Probation and Pretrial Services

20  Office and the Court, even if that factual information may be viewed

21  as inconsistent with the facts agreed to in this agreement, this

22  paragraph does not affect defendant's and the USAO's obligations not

23  to contest the facts agreed to in this agreement.

24      25.  Defendant understands that even if the Court ignores any

25  sentencing recommendation, finds facts or reaches conclusions

26  different from those agreed to, and/or imposes any sentence up to the

27  maximum established by statute, defendant cannot, for that reason,

28  withdraw defendant's guilty plea, and defendant will remain bound to

1 │ fulfill all defendant's obligations under this agreement.  Defendant
2 │ understands that no one -- not the prosecutor, defendant's attorney,
3 │ or the Court -- can make a binding prediction or promise regarding
4 │ the sentence defendant will receive, except that it will be within
5 │ the statutory maximum.

6 │ NO ADDITIONAL AGREEMENTS

7 │     26.   Defendant understands that, except as set forth herein,
8 │ there are no promises, understandings, or agreements between the USAO
9 │ and defendant or defendant's attorney, and that no additional
10 │ promise, understanding, or agreement may be entered into unless in a
11 │ writing signed by all parties or on the record in court.

12 │ PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

13 │     27.   The parties agree that this agreement will be considered
14 │ part of the record of defendant's guilty plea hearing as if the
15 │ entire agreement had been read into the record of the proceeding.

16 │ AGREED AND ACCEPTED

17 │ UNITED STATES ATTORNEY'S OFFICE
   │ FOR THE CENTRAL DISTRICT OF CALIFORNIA
18 │
   │ JOSEPH T. MCNALLY
19 │ United States Attorney,
   │ Acting Under Authority Conferred
20 │ by 28 U.S.C. § 515

21 │                                              January 19, 2023
22 │ DANIEL S. LIM                                Date
   │ Assistant United States Attorney
23 │                                              1-18-23
24 │ MELAHAT RAFIEI                               Date
   │ Defendant
25 │                                              1/18/2023
26 │ ALALEH KAMRAN                                Date
   │ Attorney for Defendant MELAHAT RAFIEI
27 │
28 │

16

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____        1-18-23
MELAHAT RAFIEI                           Date
Defendant


CERTIFICATION OF DEFENDANT'S ATTORNEY

I am Melahat Rafiei's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of her rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

17

1  provisions, and of the consequences of entering into this agreement.

2  To my knowledge: no promises, inducements, or representations of any

3  kind have been made to my client other than those contained in this

4  agreement; no one has threatened or forced my client in any way to

5  enter into this agreement; my client's decision to enter into this

6  agreement is an informed and voluntary one; and the factual basis set

7  forth in this agreement is sufficient to support my client's entry of

8  a guilty plea pursuant to this agreement.

9

10  ALALEH KAMRAN                                    Date  1/18/2023
   Attorney for Defendant MELAHAT RAFIEI

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18

EXHIBIT A

1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                  FOR THE CENTRAL DISTRICT OF CALIFORNIA

10                            SOUTHERN DIVISION

11   UNITED STATES OF AMERICA,              No.

12          Plaintiff,                      I N F O R M A T I O N

13          v.                              [18 U.S.C. §§ 1343, 1349: Attempt
                                            to Commit Wire Fraud]
14   MELAHAT RAFIEI,

15          Defendant.

16

17

18        The United States Attorney charges:

19                       [18 U.S.C. §§ 1343, 1349]

20        Beginning no later than September 2019, and continuing through

21   at least October 2019, in Orange County, within the Central District

22   of California, defendant MELAHAT RAFIEI, knowingly and with intent to

23   defraud, attempted to devise and execute a scheme to defraud and

24   obtain money from Victim 1 by means of materially false and

25   fraudulent pretenses, representations, and promises, and material

26   omissions of facts, by transmitting and causing the transmission of

27   funds into bank accounts controlled by defendant RAFIEI, by means of

28   wire communications in interstate commerce, for the purpose of

executing such scheme.

2. The scheme to defraud operated, in substance, as follows:

a. Defendant RAFIEI falsely represented to Victim 1 that, in exchange for a payment of at least $300,000, she would work to pass a cannabis-related ordinance in Anaheim that would exclusively benefit and be tailored for Victim 1's business, when in fact, defendant RAFIEI was already working on the same ordinance on behalf of other paying clients.

b. Defendant RAFIEI falsely represented to Victim 1 that defendant RAFIEI would keep only $10,000 of Victim 1's payment in exchange for her purported work, when in fact, defendant RAFIEI intended to keep $100,000 of Victim 1's payment.

c. Defendant RAFIEI falsely represented to Victim 1 that $200,000 of Victim 1's payment would go to the Anaheim Chamber of Commerce, when in fact, defendant RAFIEI intended to split $200,000 of the $300,000 equally between her and an associate of hers who was not affiliated with the Anaheim Chamber of Commerce.

///

///

///

1           d.   Defendant RAFIEI would instruct Victim 1 to pay the

2   $300,000 via checks that would be deposited into financial accounts

3   controlled by defendant RAFIEI, thereby causing the transmission of

4   wire communications in interstate commerce.

5

6

7                                                STEPHANIE S. CHRISTENSEN
    United States Attorney,

8                                                Acting Under Authority Conferred
    by 28 U.S.C. § 515

9

10

11                                               SCOTT M. GARRINGER
    Assistant United States Attorney

12       Chief, Criminal Division

13       BENJAMIN R. BARRON
    Assistant United States Attorney

14       Chief, Santa Ana Branch Office

15       DANIEL S. LIM
    MELISSA S. RABBANI

16       Assistant United States Attorneys
    Santa Ana Branch Office

17

18

19

20

21

22

23

24

25

26

27

28